No. 12-6294

# In the United States Court of Appeals for the Tenth Circuit

HOBBY LOBBY STORES, INC., MARDEL, INC., DAVID GREEN, BARBARA GREEN, STEVE GREEN, MART GREEN, AND DARSEE LETT,

*Appellants-Petitioners,*

v.

KATHLEEN SEBELIUS, Secretary of the United States Department of Health and Human Services, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, HILDA SOLIS, Secretary of the United States Department of Labor, UNITED STATES DEPARTMENT OF LABOR, TIMOTHY GEITHNER, Secretary of the United States Department of the Treasury, and UNITED STATES DEPARTMENT OF THE TREASURY,

*Appellees-Respondents.*

**On appeal from the United States District Court
for the Western District of Oklahoma**

**PETITION FOR HEARING EN BANC**

S. Kyle Duncan
Luke W. Goodrich
Mark L. Rienzi
Eric S. Baxter
Lori H. Windham
Adèle Auxier Keim
THE BECKET FUND FOR RELIGIOUS LIBERTY
3000 K Street, N.W., Suite 220
Washington, D.C. 20007
(202) 349-7209
kduncan@becketfund.org

*Attorneys for Appellants-Petitioners*

Dated: January 10, 2013

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, counsel for Appellants states the following:

Appellants David Green, Barbara Green, Steven Green, Mart Green and Darsee Lett (collectively "the Green family") are individuals.

Appellant Hobby Lobby Stores, Inc. is a privately-held company that is wholly owned by trusts controlled by the Green family. No publicly-held corporation owns 10% or more of its stock.

Mardel, Inc. is a privately-held company that is wholly owned by trusts controlled by the Green family. No publicly-held corporation owns 10% or more of its stock.

*s/ S. Kyle Duncan*
S. Kyle Duncan
*Attorney for Appellants-Petitioners*

i

## RULE 35(B) STATEMENT

Pursuant to Federal Rule of Appellate Procedure 35(b), counsel for Appellants states as follows:

*En banc* hearing is warranted because this appeal involves a question of exceptional importance. Appellants are business owners who are required by their religion to exclude certain drugs from their health insurance offerings. This appeal presents the question whether the government can use the threat of severe fines to force Appellants to abandon that religious exercise without violating the Religious Freedom Restoration Act and the First Amendment.

This issue is currently being considered by several different circuit courts, is presented in two separate appeals pending in this Circuit, and has already provoked the Seventh Circuit to criticize the approach taken by a motions panel of this Circuit in this appeal. *En banc* hearing in the first instance will (1) conserve judicial resources, (2) secure uniformity of this Court's decisions, (3) avoid placing this Circuit out of step with the majority of courts that have correctly granted injunctive relief to similarly-situated business owners, and (4) ensure that the parties and other courts receive the benefit of this Court's plenary consideration of this exceedingly important issue.

 s/ *S. Kyle Duncan*
S. Kyle Duncan
*Attorney for Appellants-Petitioners*

ii

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

RULE 35(B) STATEMENT ...................................................................................... ii

TABLE OF CONTENTS .......................................................................................... iii

TABLE OF AUTHORITIES ................................................................................... iv

INTRODUCTION ...................................................................................................... 1

STATEMENT OF FACTS ........................................................................................ 3

   I.     The Green family and Hobby Lobby ........................................................ 3

   II.    The HHS Mandate ...................................................................................... 5

   III.   The decision below ...................................................................................... 6

   IV.   The motions panel decision and the Seventh Circuit response ................... 7

ARGUMENT .............................................................................................................. 8

   I.     This appeal raises questions of exceptional and nationwide importance concerning fundamental civil rights. ........................................ 8

      A.   The issue raised here is the subject of a rapidly developing circuit split and is already presented by two appeals before this Court. .............. 8

      B.   *En banc* hearing will avoid conflicts with Circuit and Supreme Court precedent. ..................................................................................... 12

CONCLUSION ........................................................................................................ 15

CERTIFICATE OF SERVICE ............................................................................. 16

CERTIFICATE OF COMPLIANCE ................................................................... 17

# TABLE OF AUTHORITIES

## Cases

*Abdulhaseeb v. Calbone*,
    600 F.3d 1301 (10th Cir. 2010) ..........................................................13

*Adkins v. Kaspar*,
    393 F.3d 559 (5th Cir. 2004) ...............................................................14

*Am. Pulverizer Co. v. HHS*,
    No. 12-3459 (W.D. Mo. Dec. 20, 2012)...............................................10

*Annex Medical, Inc. v. Sebelius*,
    No. 12-2804 (D. Minn. Jan 8, 2013).....................................................11

*Autocam Corp. v. Sebelius*,
    No. 12-2673 (6th Cir. Dec. 28, 2012)...............................................1, 10

*Civil Liberties for Urban Believers v. City of Chicago*,
    342 F.3d 752 (7th Cir. 2003) ...............................................................14

*Conestoga Wood Specialties Corp. v. Sebelius*,
    No. 12-6744 (E.D. Pa. Dec. 28, 2012)..................................................10

*Grote Indus. v. Sebelius*,
    No. 4:12-cv-00134, 2012 WL 6725905 (S.D. Ind. Dec. 27, 2012)....................11

*Guru Nanak Sikh Soc'y v. Cnty. of Sutter*,
    456 F.3d 978 (9th Cir. 2006) ...............................................................14

*Hobby Lobby Stores, Inc. v. Sebelius*,
    568 U.S. __ (2012)...........................................................................5, 8

*Hobby Lobby Stores, Inc. v. Sebelius*,
    870 F. Supp. 2d  1278 (W.D. Okla. 2012)......................................... 4, 6, 11, 14

*Hobby Lobby Stores, Inc. v. Sebelius*,
    No. 12-6294 (10th Cir. Dec. 20, 2012)...............................................1, 7

*Korte v. Sebelius*,
    No. 12-3841 (7th Cir. Dec. 28, 2012)........................................... passim

*Legatus v. Sebelius*,
     No. 12-12061, 2012 WL 5359630 (E.D. Mich. Oct. 31, 2012) ........................10

*Midrash Sephardi, Inc. v. Town of Surfside*,
     366 F.3d 1214 (11th Cir. 2004) ..........................................................................14

*Monaghan v. Sebelius*,
     No. 12-15488, 2012 WL 6738476 (E.D. Mich. Dec. 30, 2012)........................10

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
     132 S. Ct. 2566 (2012)........................................................................................9

*Newland v. Sebelius*,
     No. 1:12-cv-1123, 2012 WL 3069154 (D. Colo. July 27, 2012) ............... 10, 14

*O'Brien v. HHS*,
     __ F.Supp.2d __, 2012 WL 4481208 (E.D. Mo. Sept. 28, 2012)........................7

*O'Brien v. HHS*,
     No. 12-3357 (8th Cir. Nov. 28, 2012) ................................................ 1, 7, 10, 12

*Saints Constantine and Helen Greek Orth. Church, Inc. v. City of New Berlin*,
     396 F.3d 895 (7th Cir. 2005) ..............................................................................14

*Sharpe Holdings, Inc. v. HHS*,
     No. 2:12-CV-92 (E.D. Mo. Dec. 31, 2012) ......................................................10

*Sherbert v. Verner*,
     374 U.S. 398 (1963)............................................................................................14

*Thomas v. Review Bd.*,
     450 U.S. 707 (1981)............................................................................................14

*Triune Health Grp., Inc. v. HHS*,
     No. 12 C 6756 (N.D. Ill. Jan. 3, 2012) ..............................................................10

*Tyndale House Publishers, Inc. v. Sebelius*,
     No. 12-1635, 2012 WL 5817323 (D.D.C. Nov. 16, 2012)................................10

*United States v. Sturm*,
     Nos. 09-1386, 09-5022, 2011 WL 6261657 (10th Cir. Apr. 4, 2011).................2

## Statutes

42 U.S.C § 300gg–13 ...................................................................5

42 U.S.C. § 18011 ......................................................................5

Administrative Procedure Act.......................................................6

Religious Freedom Restoration Act,
    42 U.S.C. § 2000bb *et seq.* ..................................................... passim

## Other Authorities

http://www.becketfund.org/hhsinformationcentral/ ................................................10

http://www.healthcare.gov/news/factsheets/2010/06/ keeping-the-health-
    plan-you-have-grandfathered.html .......................................................5

http://www.hobbylobby.com/assets/pdf/holiday_messages/current_message.
    pdf ...................................................................................3

## Rules

10TH CIR. R. 35.1 .....................................................................13

10TH CIR. R. 35.7 ......................................................................2

FED. R. APP. P. 35 .............................................................. passim

FED. R. APP. P. 8.......................................................................7

## Regulations

45 C.F.R. § 147.130 ...................................................................5

76 Fed. Reg. 46621 ....................................................................5

## Constitutional Provisions

U.S. Const., amend. I ..................................................................6

## INTRODUCTION

The Court should hear this appeal *en banc* in the first instance. FED. R. APP. P. 35(b)(1). The question presented—whether a federal regulation (the "mandate") may force business owners to cover drugs and devices against their religious beliefs or pay severe fines—is one of exceptional importance that is pending before this Court in this appeal and another appeal, *see Newland v. Sebelius*, *appeal docketed*, No. 12-1380 (10th Cir. Sept. 26, 2012), and also before three other circuits.[1] Numerous federal courts, including motions panels of the Seventh and Eighth Circuits,[2] have already concluded that such business owners deserve preliminary injunctive relief under the Religious Freedom Restoration Act (RFRA). A motions panel of this Court, however, has taken the opposite view that business owners like Appellants are effectively excluded from seeking RFRA protection from the mandate. Order of Dec. 20, 2012 (denying injunction pending appeal) (Ex. B). That decision has been expressly rejected by a Seventh Circuit motions panel as "misunderstand[ing] the substance of [the religious liberty]

---

[1]    *O'Brien v. HHS*, *appeal docketed*, No. 12-3357 (8th Cir. Oct. 2, 2012); *Autocam Corp. v. Sebelius*, *appeal docketed*, No. 12-2673 (6th Cir. Dec. 26, 2012); *Korte v. Sebelius*, *appeal docketed*, No. 12-3841 (7th Cir. Dec. 17, 2012).

[2]    *See Korte v. Sebelius*, No. 12-3841 (7th Cir. Dec. 28, 2012) (order granting injunction pending appeal); *O'Brien v. HHS*, No. 12-3357 (8th Cir. Nov. 28, 2012) (same); *but see Autocam Corp. v. Sebelius*, No. 12-2673 (6th Cir. Dec. 28, 2012) (denying relief).

1

claim." *Korte v. Sebelius*, No. 12-3841, slip op. at 5 (7th Cir. Dec. 28, 2012) (order granting injunction pending appeal) (Ex. C).

This appeal thus presents the extraordinary situation where initial *en banc* hearing is needed to secure the uniformity of this Court's decisions—and their consistency with other circuits—on a question of national importance. *See* FED. R. APP. P. 35(a)(1) (uniformity), (b)(1) (exceptional importance). Hearing the instant appeal through the normal panel process would waste judicial resources and likely produce either conflicting panel decisions, divergence with other circuits, or both, leading to future *en banc* review. *See, e.g., United States v. Sturm*, Nos. 09-1386, 09-5022, 2011 WL 6261657, at *1 (10th Cir. Apr. 4, 2011) (ordering *en banc* rehearing, *sua sponte*, "for purposes of consistency" where simultaneous panel decisions addressed "a common and important issue"); FED. R. APP. P. 35(b), advisory committee's note ("an *en banc* proceeding provides a safeguard against unnecessary intercircuit conflicts"). Consequently, *en banc* hearing of this appeal in the first instance is the most efficient way of ensuring that this Court speaks with one voice on this question of exceptional importance on which numerous federal courts have disagreed and will likely continue to do so.[3]

---

[3]    Appellants do not seek *en banc* rehearing of their motion for injunction pending appeal. *See* 10TH CIR. R. 35.7. However, the motions panel opinion denying that motion—and its rejection by the Seventh Circuit—underscore the need for hearing *en banc* of this appeal of the district court's decision.

## STATEMENT OF FACTS

### I.    THE GREEN FAMILY AND HOBBY LOBBY

The facts of this case are not in dispute. Appellants are the Green family and the companies they own and operate: Hobby Lobby Stores, Inc. and Mardel, Inc. Verified Compl. ("VC") ¶¶ 18-24. Founded by David Green in 1970, Hobby Lobby has grown from a small picture frame company into one of the nation's leading arts and crafts chains, operating over 500 stores in 41 states with over 13,000 full-time employees. VC ¶¶ 2, 18, 32-36. David and his wife Barbara co-own Hobby Lobby and a chain of Christian bookstores known as Mardel (collectively, "Hobby Lobby"), with their three children. VC ¶¶ 18-22, 36-38. The Green family alone controls Hobby Lobby's operations and policies through a management trust. VC ¶¶ 38.

The Greens sign a Statement of Faith and a Trustee Commitment to run Hobby Lobby according to Christian religious beliefs. VC ¶¶ 38, 39-52. They and their companies engage in numerous exercises of religion through their business activities. For example, Hobby Lobby takes out hundreds of full-page ads every Christmas and Easter celebrating the religious nature of the holidays, and inviting people to learn about Jesus Christ. VC ¶ 47.[4] The company monitors merchandise,

---

[4]     This year's holiday ad, inviting readers to "call Need Him Ministry at 1-888-NEED-HIM" if they "would like to know Jesus as Lord and Savior," can be found at http://www.hobbylobby.com/assets/pdf/holiday_messages/current_message.pdf.

marketing, and operations to make sure Appellants do not participate in anything they believe is immoral or harmful to others. VC ¶¶ 43-44. Chaplains, spiritual counseling, and religiously-themed financial management classes are available for employees. VC ¶ 51. And all of Appellants' stores close on Sundays—at significant cost—to give employees a day of rest. VC ¶ 45.

Particularly relevant here is Appellants' religious exercise concerning what insurance coverage they can purchase consistent with their religious beliefs about unborn human life. VC ¶ 53. Appellants have no objection to providing insurance coverage for most contraceptives. VC ¶57. However, Appellants' religious beliefs prohibit them from purchasing insurance coverage for drugs or devices that could cause an abortion. VC ¶¶ 44, 52-56, 103. Appellants therefore exclude from their self-funded health insurance plan emergency contraceptive devices that can cause abortion (such as IUDs) and pregnancy-terminating drugs like RU-486, Plan B and Ella. VC ¶¶ 52-56, 95, 103-114, 146.[5] Neither the district court nor the government questioned the sincerity of this religious exercise. Op. 5, 20.

---

[5]     At one time, two of the relevant drugs were inadvertently covered. As the district court correctly found, this coverage was not "due to anything other than a mistake. Upon discovery of the coverage, Hobby Lobby immediately excluded the two drugs, Plan B and Ella, from its prescription drug policy. [The government] does not dispute that the company's policies otherwise long excluded abortion-inducing drugs." 870 F. Supp. 2d  1278, 1286 (W.D. Okla. 2012) (Ex. A).

## II.    THE HHS MANDATE

It is also undisputed that the federal regulation at issue in this case (the "mandate") would require Appellants to abandon their religious exercise concerning coverage of abortion-causing drugs. Specifically, the mandate requires that employer health insurance cover all FDA-approved contraceptives and sterilization methods, including drugs and devices—namely, Plan B, Ella, and certain IUDs—that may prevent implantation of a fertilized egg in the womb and that Appellants are therefore religiously obligated to exclude. 42 U.S.C § 300gg-13(a)(4); 76 Fed. Reg. 46621, 46626 (Aug. 3, 2011); VC ¶¶ 86-96. Although the government has exempted plans covering millions,[6] Appellants do not qualify for any exemption.

The mandate takes effect against Appellants when Hobby Lobby's new plan year begins on July 1, 2013. *See* 42 U.S.C. § 300gg-13(b); 76 Fed. Reg. 46621, 46623.[7] At that time, Appellants must either abandon their religious exercise of

---

[6]    For example, Defendants have exempted "grandfathered" plans—*i.e.*, plans that have not undergone significant changes since 2010. 42 U.S.C. § 18011(a)(2); VC ¶ 68-70. Appellees acknowledge that grandfathered plans will cover millions in upcoming years. *See* http://www.healthcare.gov/news/factsheets/2010/06/keeping-the-health-plan-you-have-grandfathered.html). Also exempt are some non-profit religious employers—essentially houses of worship under the tax code. *See* 45 C.F.R. § 147.130(a)(1)(iv)(B)(1)-(4); VC ¶ 123.

[7]    When suit was filed in September 2012, Hobby Lobby was scheduled to begin a new plan year on January 1, 2013. VC ¶¶121, 132. However, after being denied temporary relief by Justice Sotomayor on December 26, 2012, 568 U.S. __ (2012) (No. 12A644), Appellants learned that ERISA allowed them to make a

excluding abortion-causing drugs from their health plan, or be exposed to severe penalties—including potential fines of up to $1.3 million per day, 26 U.S.C. § 4980D, annual penalties of about $26 million, *id.* § 4980H, and exposure to private suits. 29 U.S.C. §§ 1185d(a)(1), 1132; VC ¶¶ 134-44.

## III.  THE DECISION BELOW

Appellants sued in September 2012, challenging the mandate under RFRA, the First Amendment, and the Administrative Procedure Act. VC ¶¶ 12, 13. They simultaneously moved for a preliminary injunction, which the court denied on purely legal grounds. 870 F. Supp. 2d 1278, 1290-96 (W.D. Okla. 2012) (Ex. A). The court accepted the sincerity of Appellants' beliefs and the character of their religious exercise. [8] Yet it nonetheless denied relief because it deemed the mandate's burden on the religious exercise to be not "direct and personal," *Id.* at 1296, but instead "indirect and attenuated," because it applies to the Greens' businesses and is linked to an employee's decision to use certain drugs. *Id.* at 1294

---

retroactive modification to their plan year. Accordingly, Appellants' plan year has now changed so that the mandate will not take effect against them until July 1, 2013.

[8]     *See* 870 F. Supp. 2d at 1293 (noting that "no one questions" the Greens' sincerity or that the mandate burdens their religious exercise, "at least indirectly"); *Id.* at 1285 (noting the Greens' beliefs "'prohibit them from deliberately providing insurance coverage for prescription drugs or devices inconsistent with their faith, in particular abortion-causing drugs and devices'") (quoting VC ¶¶ 53-54).

(citing *O'Brien v. HHS*, __ F.Supp.2d __, 2012 WL 4481208, at *6 (E.D. Mo. Sept. 28, 2012).[9]

## IV.    THE MOTIONS PANEL DECISION AND THE SEVENTH CIRCUIT RESPONSE

Appellants filed a notice of appeal the same day the district court's order issued. The next day, Appellants sought an injunction pending appeal from this Court. *See* FED. R. APP. P. 8. A month later, a two-judge panel denied Appellants' motion. Like the district court, the panel believed—admittedly "without the benefit of full merits briefing and oral argument"—that the mandate's burden on the Greens was "indirect and attenuated," because, in its view, the Greens merely complain about contributing "funds" to a health plan that *employees* might use for purposes "condemned by [the Greens'] religion." No. 12-6294, slip op. at 7 (10th Cir. Dec. 20, 2012) (denying injunction pending appeal) ("Mot. Op.") (Ex. B). Consequently, the panel concluded Appellants had invoked RFRA not "to protect [their] own participation in (or abstention from) a specific practice required (or condemned) by [their] religion," but rather to "extend the reach of RFRA to

---

[9]    The Eighth Circuit has since significantly undermined the district court's decision in *O'Brien* (upon which the district court here relied) by granting O'Brien's motion for an injunction pending appeal. *O'Brien*, No. 12-3357 (8th Cir. Nov. 28, 2012) (order granting injunction pending appeal).

encompass the independent conduct of third parties with whom the plaintiffs have only a commercial relationship," which the panel deemed unlikely to succeed. *Id.* [10]

A week later, on December 28, 2012, a Seventh Circuit motions panel explicitly rejected the *Hobby Lobby* motion panel's analysis and granted a business owner injunctive relief pending appeal. *See Korte*, 2012 WL 6757353 at *3. After quoting the *Hobby Lobby* panel decision at length, the Seventh Circuit panel concluded:

> With respect, we think [the *Hobby Lobby* panel's approach] misunderstands the substance of the claim. The religious-liberty violation at issue here inheres in the *coerced coverage* of contraception, abortifacients, sterilization, and related services, *not*—or perhaps more precisely, *not only*—in the later purchase or use of contraception or related services.

*Id.* (emphases in original).

## ARGUMENT

I. **THIS APPEAL RAISES QUESTIONS OF EXCEPTIONAL AND NATIONWIDE IMPORTANCE CONCERNING FUNDAMENTAL CIVIL RIGHTS.**

A. **The issue raised here is the subject of a rapidly developing circuit split and is already presented by two appeals before this Court.**

The central question raised in this appeal—whether the federal government can use the threat of massive fines to force business owners to abandon their religious objections to providing insurance coverage for certain drugs—is a matter of

---

[10]    Justice Sotomayor subsequently issued an in-chambers opinion denying an injunction under the All Writs Act, explaining that such "extraordinary" relief would be granted only "sparingly." *Hobby Lobby Stores, Inc. v. Sebelius,* 568 U.S. __ (2012) (No. 12A644); *see also Korte,* 2012 WL 6757353 at *4 (All Writs Act standard "differs significantly from the standard applicable to a motion for a stay or injunction pending appeal in this court").

exceptional importance meriting *en banc* consideration. *See* FED. R. APP. P. 35 (*en banc* hearing may be ordered where "the proceeding involves a question of exceptional importance"). Even as the Supreme Court upheld the Patient Protection and Affordable Care Act's individual mandate as a matter of Congressional power, more than one Justice suggested that the Act's novel insurance-purchase mandates could raise serious civil rights questions. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2624 (2012) (Ginsberg, J., dissenting in part) (observing that "[a] mandate to purchase a particular product would be unconstitutional if, for example, the edict … interfered with the free exercise of religion"). This case starkly presents one of those questions. The mandate at issue here commands the family owners of a well-known American business—on pain of draconian fines— to abandon their sincere, public, and longstanding religious exercise of refusing to provide insurance coverage for abortion-causing drugs. That mandate threatens not only the Green family's faith, but also—as a result of possible fines—their ability to continue providing jobs and health benefits to more than 13,000 full-time employees who work in the company's 500 stores across the nation.

If this appeal affected only the Greens, Hobby Lobby, and their employees and families, that alone would merit *en banc* consideration. But the issues have much broader importance. Although the mandate went into effect only on August 1, 2012, it has already provoked more than 40 different federal lawsuits brought by

more than 100 different plaintiffs across the country.[11] Moreover, this nationwide litigation has produced some fourteen judicial opinions addressing the precise question at issue here: whether religiously-objecting business owners have any recourse under the Religious Freedom Restoration Act (RFRA) against the mandate's coercion of their religious exercise. The clear majority of those opinions—including the District of Colorado's opinion in *Newland v. Sebelius*—favor business owners, and, indeed, to date two other circuits' motion panels have granted injunctive relief pending appeal to business owners who were denied preliminary injunctions below.[12] Yet, the two decisions in this case have taken the

---

[11]     The cases are tracked at http://www.becketfund.org/hhsinformationcentral/ (last visited January 10, 2013).

[12]     Ten courts (including motions panels of the Seventh and Eighth Circuits) have granted injunctive relief. *See* (1). *Korte v. Sebelius*, 2012 WL 6757353, at *1 (7th Cir. Dec. 28, 2012) (granting injunction pending appeal); (2). *O'Brien v. U.S. Dep't of Health & Human Servs.*, No. 12-3357 (8th Cir. Nov. 28, 2012) (same); (3). *Triune Health Grp., Inc. v. HHS*, No. 12 C 6756, slip op. at 1 (N.D. Ill. Jan. 3, 2012) (granting preliminary injunction); (4). *Sharpe Holdings, Inc. v. HHS*, No. 2:12-CV-92, slip op. at 1 (E.D. Mo. Dec. 31, 2012) (granting temporary restraining order); (5). *Monaghan v. Sebelius*, No. 12-15488, 2012 WL 6738476, at *3-6 (E.D. Mich. Dec. 30, 2012) (same); (6). *Conestoga Wood Specialties Corp. v. Sebelius*, No. 12-6744, slip op. at 1 (E.D. Pa. Dec. 28, 2012) (same); (7). *Am. Pulverizer Co. v. HHS*, No. 12-3459, slip op. at 1 (W.D. Mo. Dec. 20, 2012) (granting preliminary injunction); (8). *Tyndale House Publishers, Inc. v. Sebelius*, No. 12-1635, 2012 WL 5817323, at *10-18 (D.D.C. Nov. 16, 2012) (same); (9). *Legatus v. Sebelius*, No. 12-12061, 2012 WL 5359630, at *6 (E.D. Mich. Oct. 31, 2012) (same); (10). *Newland v. Sebelius*, No. 1:12-cv-1123, 2012 WL 3069154, at *6-8 (D. Colo. July 27, 2012) (same), appeal docketed, No. 12-1380 (10th Cir. Sept. 26, 2012). Four courts (including motions panels of this Court and the Sixth Circuit) have denied temporary relief. *See* (1). *Autocam Corp. v. Sebelius*, No. 12-2673, at 2-3 (6th Cir., Dec. 28, 2012) (denying injunctive relief pending appeal); (2). *Hobby Lobby*, No.

10

erroneous minority position that business owners are effectively excluded from raising a religious objection to whatever drugs, devices, or procedures the government requires them to include in the health insurance they pay for and offer to employees. Most courts, and two other circuits have already rejected this dubious approach. In fact, when granting an injunction pending appeal to another business owner, the Seventh Circuit expressly criticized this Court's denial of similar relief as "misunderstand[ing]" the religious liberty claim at issue:

> On an interlocutory appeal from the district court's denial of a preliminary injunction, the Tenth Circuit denied an injunction pending appeal, noting that "the particular burden of which plaintiffs complain is that funds, which plaintiffs will contribute to a group health plan, might, after a series of independent decisions by health care providers and patients covered by [the corporate] plan, subsidize *someone else's* participation in an activity condemned by plaintiff[s'] religion." *Id.* at 7 (quoting *Hobby Lobby Stores, Inc. v. Sebelius,* 870 F. Supp. 2d 1278, 1294 (W.D. Okla. 2012)). With respect, we think this misunderstands the substance of the claim. The religious-liberty violation at issue here inheres in the *coerced coverage* of contraception, abortifacients, sterilization, and related services, *not—* or perhaps more precisely, *not only*—in the later purchase or use of contraception or related services.

*Korte v. Sebelius*, No. 12-3841 (7th Cir., Dec. 28, 2012) (emphases in original); *see also O'Brien v. Sebelius*, No. 12-3357 (8th Cir. Nov. 28, 2012) (granting injunction to business owner plaintiff).

---

12-6294, at 7 (same); (3). *Grote Indus. v. Sebelius*, No. 4:12-cv-00134, 2012 WL 6725905, at *6-7 (S.D. Ind. Dec. 27, 2012) (denying preliminary injunction); (4). *Annex Medical, Inc. v. Sebelius*, No. 12-2804, slip op. at 6-16 (D. Minn. Jan 8, 2013) (same).

The rapid development of conflicting judicial opinions on the same issue during nationwide litigation underscores the exceptional importance of this appeal. *Cf.* FED. R. APP. P. 35 (issue exceptionally important "if it involves an issue on which the panel decision conflicts with the authoritative decisions of other United States Courts of Appeals that have addressed the issue"). At least four circuits—the Sixth, Seventh, Eighth, and Tenth—will hear appeals on the same RFRA issue in the upcoming months. Two appeals (including this one) are now being briefed before this Court. If this appeal is heard under the normal panel process, it is virtually inevitable that this Court will be asked to re-hear one or both cases *en banc*—either because panel decisions conflict or because a panel decision conflicts with another circuit's decision. FED. R. APP. P. 35(a)(1), (a)(2). Judicial efficiency and consistency would therefore best be served by hearing this appeal *en banc* now. This would aid the parties and other courts, all of whom would have the benefit of this Circuit's plenary consideration of this critically important national issue.

## B. *En banc* hearing will avoid conflicts with Circuit and Supreme Court precedent.

Another consideration counsels *en banc* hearing: if a merits panel follows the analysis of the motions panel, the result would draw this Circuit into direct conflict with Circuit and Supreme Court precedent. *See* 10TH CIR. R. 35.1(A) (*en banc* hearing "intended to focus the entire court on an issue of exceptional public importance or on a panel decision that conflicts with a decision of the United

12

States Supreme Court or of this court"). *En banc* hearing would avoid this dilemma.

Following the district court, the motions panel ruled that the mandate's burden on the Greens was not "substantial" under RFRA because it was "indirect and attenuated." Mot. Op. at 7. But a decision on that basis violates Circuit precedent, which makes no distinction between "direct" and "indirect" burdens. *See Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1315 (10th Cir. 2010) (explaining that a law substantially burdens religious exercise by "requir[ing] participation" in religiously-prohibited activities, by "prevent[ing] participation" in religiously-motivated activities, or by "plac[ing] substantial pressure" on a believer to violate religious exercise). Here, there can be no serious doubt that the mandate "requires participation" in the religiously-prohibited activity of providing insurance coverage for the drugs and devices at issue. Nor can there be any question that the mandate and its accompanying enforcement mechanisms impose (and, obviously, are designed to impose) "substantial pressure" on Appellants to make them provide this insurance coverage. Moreover, the "indirect and attenuated" standard adopted by the motions panel was taken from a discredited Seventh Circuit opinion which other circuits have rejected and which the Seventh Circuit itself did not mention

13

when—in direct contradiction to the motions panel here—it granted injunctive relief in *Korte*.[13]

More fundamentally, the Supreme Court has long rejected any distinction between "direct" and "indirect" burdens in evaluating whether laws substantially burden religious exercise. *See Sherbert v. Verner*, 374 U.S. 398, 403 (1963) (invalidating religious burden under free exercise that was "only an indirect result" of unemployment laws); *Thomas v. Review Bd.*, 450 U.S. 707, 718 (1981) (explaining that, "[w]hile the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial"). The motion panel's approach would thus create a direct conflict with decades of Supreme Court precedent, which is why numerous other courts have declined to follow it in granting business owners injunctive relief from the mandate. *See, e.g., Newland*, 2012 WL 3069154, at *9 (rejecting this approach "out of hand" because it requires "impermissible line drawing" in violation of *Thomas*).

---

[13]     *See* 870 F. Supp. 2d at 1294 (relying on *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003) ("*CLUB*"). Three circuits have rejected *CLUB*: *see Adkins v. Kaspar*, 393 F.3d 559, 568-70 (5th Cir. 2004); *Guru Nanak Sikh Soc'y v. Cnty. of Sutter*, 456 F.3d 978, 988 & n.12 (9th Cir. 2006); *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004). The Seventh Circuit itself has significantly limited *CLUB*. *See, e.g.*, *Saints Constantine and Helen Greek Orth. Church, Inc. v. City of New Berlin*, 396 F.3d 895, 899-900 (7th Cir. 2005) (distinguishing *CLUB*).

14

*En banc* hearing will ensure that this appeal's outcome will not—unlike the motions panel's approach—bring this Circuit into conflict with itself, with other circuits, and with longstanding Supreme Court jurisprudence.

## CONCLUSION

This appeal lies at the epicenter of a national controversy over whether the federal government may override the consciences of business owners. *En banc* hearing is warranted because this exceptionally important issue is presented in appeals before multiple circuits (including two before this Court), and because a motions panel of this Court has already drawn itself into conflict with two other circuits. The normal panel process would almost certainly bring this Court into internal conflict, into conflict with other circuits, or both, necessitating *en banc* rehearing. Appellants therefore ask the Court to grant hearing *en banc* now.

Respectfully submitted,

 s/ *S. Kyle Duncan*
S. Kyle Duncan
Luke W. Goodrich
Mark L. Rienzi
Eric S. Baxter
Lori H. Windham
Adèle Auxier Keim
THE BECKET FUND FOR RELIGIOUS LIBERTY
3000 K Street, N.W., Suite 220
Washington, D.C. 20007
(202) 349-7209
kduncan@becketfund.org

*Attorneys for Appellants-Petitioners*

15

## CERTIFICATE OF SERVICE

I certify that on January 10, 2013, I caused the foregoing *Petition for Hearing En Banc* to be served electronically via the Court's electronic filing system on the following parties who are registered in the system:

Alisa B. Klein, Attorney
Email: alisa.klein@usdoj.gov

Mark B. Stern, Attorney
Email: mark.stern@usdoj.gov

All other case participants will be served via the Court's electronic filing system as well.


  s/ *S. Kyle Duncan*
S. Kyle Duncan
THE BECKET FUND FOR RELIGIOUS LIBERTY
3000 K Street, N.W., Suite 220
Washington, DC 20007
(202) 349-7209

*Attorney for Appellants-Petitioners*

## CERTIFICATE OF COMPLIANCE

Pursuant to this Court's guidelines on the use of the CM/ECF system, I hereby certify that:

(1)  all required privacy redactions have been made;

(2)  no hard copies are required to be filed;

(3)  the ECF submission was scanned for viruses with the most recent version of Symantec Endpoint Protection (last updated January 10, 2013) and, according to the program, is free of viruses.

*s/ S. Kyle Duncan*

S. Kyle Duncan

THE BECKET FUND FOR RELIGIOUS LIBERTY

3000 K Street, N.W., Suite 220

Washington, DC 20007

(202) 349-7209

*Attorney for Appellants-Petitioners*